MICHAEL L. NASH,

        Plaintiff,

        v.                        Case No. 26-CV-461

TONIA ROZMARYNOSKI,
OFFICERS JOHN DOE 1–2,
NURSE JOHN DOE 1, and
NURSES JANE DOE 1–2,

        Defendants.

---

## SCREENING ORDER

---

Plaintiff Michael L. Nash, who is currently serving a state prison sentence at Green Bay Correctional Institution and representing himself, filed a complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated. This matter comes before the Court on Plaintiff's motion for leave to proceed without prepayment of the filing fee and to screen the complaint.

### MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE

Plaintiff has requested leave to proceed without prepaying the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. § 1915(b)(1). Plaintiff has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint, as required under 28 U.S.C. § 1915(a)(2), and has been assessed and paid an initial partial filing fee of $66.17. Plaintiff's motion for leave to proceed without prepayment of the filing fee will be granted.

## SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

2

alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

**ALLEGATIONS OF THE COMPLAINT**

In screening a complaint, the Court accepts the allegations as true and draws all reasonable inferences in the plaintiff's favor. *See Schillinger v. Kiley*, 954 F.3d 990, 994 (7th Cir. 2020) (citation omitted). The Court notes, however, that the allegations in the complaint are just that, allegations; they are Plaintiff's version of the events that have purportedly occurred. With this in mind, the Court will summarize Plaintiff's allegations as presented in the complaint.

At all times relevant, Plaintiff was housed in Green Bay Correctional Institution's Restrictive Housing Unit (RHU). Plaintiff suffers from chronic bronchitis. On March 22, 2023, RHU staff sprayed an inmate in a nearby cell with "dangerous chemicals." Plaintiff, who was asleep, woke up and began coughing, gasping for air, and having difficulty breathing in reaction to the chemicals in the air. Plaintiff pushed his cell's medical button for help, but no one answered. He went to his cell front to yell for staff and asked others to do the same. Staff did not respond and, after some time, Plaintiff lost consciousness and passed out onto his cell floor. Compl. at 2–3, Dkt. No. 1.

Plaintiff woke up while on his cell floor with Officers John Doe 1 and 2 touching his body and saying, "Don't move or we'll spray you." While Plaintiff was unconscious, staff put leg restraints and a waist belt on Plaintiff. As Officers John Doe 1 and 2 assisted Plaintiff to his cell front, Plaintiff felt some slight pain in his knee and had problems walking and bending his knee. *Id.* at 3.

Supervisor Tonia Rozmarynoski and Officers John Doe 1 and 2 used their body cameras to document that Plaintiff had slight swelling in his knee. They ordered a wheelchair to escort

3

Plaintiff to the medical room to see Nurse John Doe 1. Plaintiff informed Nurse John Doe 1 that something was wrong with his knee. Nurse John Doe 1 responded, "I'm not here about your knee, you can fill a blue slip out for that. This is about you passing out in the cell from the chemicals." Nurse John Doe 1 treated Plaintiff by checking Plaintiff's vital signs. *Id.* at 3–4.

Supervisor Rozmarynoski and Officers John Doe 1 and 2 wheeled Plaintiff to his cell front and assisted Plaintiff out of the wheelchair. Even though Supervisor Rozmarynoski knew Plaintiff had some knee pain and slight swelling and allowed Plaintiff to sit in a wheelchair, she ordered Plaintiff to kneel down so Officers John Doe 1 and 2 could remove the leg restraints. Plaintiff responded, "I can't kneel down and I don't need to kneel for you to remove these leg restraints." Supervisor Rozmarynoski told Plaintiff she was giving him a direct order to kneel down. Plaintiff stated, "Captain I can't, you know I would if I could." Officers John Doe 1 and 2 started to kick Plaintiff's leg and forced him down. Supervisor Rozmarynoski pulled her taser from her waist and placed it upon Plaintiff's back. She instructed Officers John Doe 1 and 2 to force Plaintiff to his knees, which they did. Plaintiff did not resist, other than note that he was in pain. Plaintiff asserts that Defendants' force resulted in a tear in Plaintiff's ACL, meniscus cup, and buckle handle. Plaintiff complained about his knee pain to Supervisor Rozmarynoski and Officers John Doe 1 and 2 to no avail. *Id.* at 4–5.

The next day, Plaintiff was taken to the medical room at 9:15 p.m. to see Nurse Jane Doe 1. Nurse Jane Doe 1 gave Plaintiff some ice and Ibuprofen for his injuries and put in for an X-ray. Nurses Jane Doe 1 and 2 refused to order an MRI. On May 9, 2023, Nurse Jane Doe 1 provided Plaintiff with a knee splint, but Plaintiff was still limping around in pain. An MRI was not approved until late 2023, which revealed that Plaintiff had a tear in his ACL, meniscus cup, and

4

buckle handle.  Plaintiff ultimately needed knee surgery.  Plaintiff seeks monetary damages.  *Id.* at 5–6.

**ANALYSIS**

"To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that he or she was deprived of a right secured by the Constitution or the laws of the United States, and that this deprivation occurred at the hands of a person or persons acting under the color of state law."  *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)).

Plaintiff asserts that Defendants subjected him to cruel and unusual punishment under the Eighth Amendment.  He contends that Supervisor Rozmarynoski and Officers John Doe 1 and 2 used excessive force against him when they forced him to kneel, even though they knew Plaintiff had difficulty bending his knee.  "[T]he unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment."  *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).  The "core judicial inquiry" when considering the amount of force used is "whether [the] force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Id.* at 6 (citing *Whitley*, 475 U.S. at 319).  Based on the allegations in Plaintiff's complaint, Plaintiff may proceed on an Eighth Amendment excessive force claim against Supervisor Rozmarynoski and Officers John Doe 1 and 2.

Plaintiff also asserts that Nurses John Doe 1, Jane Doe 1, and Jane Doe 2 were deliberately indifferent to his serious medical needs.   "[T]he Eighth Amendment, as the Supreme Court has interpreted it, protects prisoners from prison conditions that cause the wanton and unnecessary infliction of pain, including . . . grossly inadequate medical care."  *Gabb v. Wexford Health*

5

*Sources, Inc.*, 945 F.3d 1027, 1033 (7th Cir. 2019) (quoting *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014)) (internal quotation marks omitted). The Court uses a two-part test to evaluate whether medical care amounts to cruel and unusual punishment; it asks (1) "whether a plaintiff suffered from an objectively serious medical condition" and (2) "whether the individual defendant was deliberately indifferent to that condition." *Id.* (quoting *Petties v. Carter*, 836 F.3d 722, 727–28 (7th Cir. 2016) (en banc)). Plaintiff asserts that Nurse John Doe 1 failed to provide care for his knee pain and that Nurses Jane Doe 1 and 2 provided inadequate care for his knee and delayed proper treatment for his injuries. Based on the allegations contained in the complaint, Plaintiff may proceed on an Eighth Amendment deliberate indifference claim against Nurses John Doe 1, Jane Doe 1, and Jane Doe 2.

**IT IS THEREFORE ORDERED** that Plaintiff's motion for leave to proceed *in forma pauperis* (Dkt. No. 7) is **GRANTED**.

**IT IS FURTHER ORDERED** that, pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of Plaintiff's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on Tonia Rozmarynoski.

**IT IS FURTHER ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, Tonia Rozmarynoski shall file a responsive pleading to the complaint within **sixty days** of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that the agency having custody of Plaintiff shall collect from his institution trust account the $283.83 balance of the filing fee by collecting monthly payments from Plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each

6

time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Plaintiff is transferred to another institution, the transferring institution shall forward a copy of this order along with Plaintiff's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that a copy of this order be sent to the officer in charge of the agency where Plaintiff is confined.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions. After the Court enters the scheduling order, Plaintiff may make discovery requests (written questions or requests for documents) on the named defendant in an effort to identify the real names of the John and Jane Doe Defendants. Once he knows the real names of the Doe Defendants, he should file a motion identifying their names. Again, Plaintiff should not serve any discovery request upon the named defendant until *after* the Court enters a scheduling order.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

> Honorable Byron B. Conway
> c/o Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 125 S. Jefferson Street, Suite 102
> Green Bay, WI 54301

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS.  It will only delay the processing of the matter.

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.  In addition, the parties must notify the Clerk of Court of any change of address.  Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Enclosed is a guide prepared by court staff to address common questions that arise in cases filed by prisoners.  Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that Plaintiff may find useful in prosecuting this case.

Dated at Green Bay, Wisconsin on May 21, 2026.

s/ *Byron B. Conway*
BYRON B. CONWAY
United States District Judge

8